```
IN THE DISTRICT COURT OF THE UNITED STATES

       FOR THE DISTRICT OF SOUTH CAROLINA

MALENA GILSTRAP,                    ) Civil Action No. 3:08-1990-GRA-JRM
                                    )
             Plaintiff,             )
                                    )
      v.                            )
                                    ) REPORT AND RECOMMENDATION
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF SOCIAL              )
SECURITY ADMINISTRATION,            )
                                    )
             Defendant.             )
_____)
```

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") to terminate her Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on September 24, 1996. In a decision issued November 21, 1996, Plaintiff was found to meet Section 6.02A (chronic dialysis for renal failure) of the Listing of Impairments ("Listings), 20 C.F.R. Part 404, Subpart P, Appendix 1 and was awarded disability. Following a continuing disability review, Plaintiff's disability was determined to have ceased as of June 1, 2004. The decision was affirmed on reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing before the ALJ was held on May 11, 2005. As Plaintiff was not represented at the hearing, the ALJ gave her additional time to seek counsel. A second hearing, at which Plaintiff appeared and testified (and was represented by a non-attorney representative), was held on December 9, 2005.

The ALJ issued a decision on July 19, 2006, finding that (as of June 1, 2004) Plaintiff did not have an impairment or combination of impairments that met the Listings, Plaintiff had medical improvement that related to her ability to work because her renal impairment no longer met the Listings, and her disability ceased as of June 1, 2004. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform. On March 27, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action on May 23, 2008.

## FACTUAL BACKGROUND

Plaintiff was thirty-one years old at the time her disability was found to have ceased and thirty-three years old at the time of the ALJ's decision. She has a high school education and approximately one year of college. Plaintiff alleges continuing disability due to polycystic kidney disease, high blood pressure, back pain, and depression.

## ALJ's FINDINGS

The ALJ found (Tr. 16-22):

1. The most recent favorable decision finding that the claimant was disabled is the determination dated November 21, 1996. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairment: chronic renal failure. This impairment was found to meet section 6.02A (chronic dialysis for renal failure) of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

3. Through June 1, 2004, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (SGA)(20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, as of June 1, 2004, the claimant had the following medically determinable impairments: polycystic kidney disease and history of kidney transplant, obesity, depression, and hypertension.

5. As of June 1, 2004, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred as of June 1, 2004 (20 CFR 404.1594(b)(1)).

7. The medical improvement is related to the ability to work because, as of June 1, 2004, the impairment present at the time of the CPD no longer met or medically equaled a listing (20 CFR 404.1594(c)(3)(i)).

8. As of June 1, 2004, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

9. Based on the impairments present as of June 1, 2004, the claimant had the residual functional capacity to perform work with restrictions that require no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; and the performance of only simple, routine work.

10. As of June 1, 2004, the claimant was unable to perform past relevant work. (20 CFR 404.1565).

11. On June 1, 2004, the claimant was a younger individual 18-44 (20 CFR 404.1563).

12. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

13. Transferability of job skills is not material to the determination of disability due to claimant's age (20 CFR 404.1568).

14. As of June 1, 2004, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of June 1, 2004, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a), 416.905(a), see Blalock, 483 F.2d at 775.

**MEDICAL EVIDENCE**

Plaintiff was examined in 1995 by a physician with vocational rehabilitation and found to have a congenital deformity of her right hand with shortening of the phalanges, which was felt to be a minimal problem. Tr. 140-141. In 1996, Dr. Mark Dermer provided Plaintiff routine prenatal care and treatment for chronic borderline hypertension. She was transferred to another physician for perinatal care in September 1996 after she developed anuria with eclampsia. Prior to her transfer, she had 2+ ankle edema, her blood pressure was 174/101, and she weighed 207 pounds. Plaintiff was noted to have a history of hand and mouth operations as a child due to orofaciodigital syndrome, and had a defect of the tongue. See Tr. 142-144.

On September 6, 1996, Plaintiff was admitted to Greenville Memorial Hospital with eclampsia with hemolysis, elevated liver function tests, hypertension, and seizures. She had stable renal dysfunction with an initial creatinine level of 4.7 that increased throughout her hospitalization to the mid 6 level. She underwent a Cesarean section. Investigation of her renal process, including

4

renal biopsy and CT scans, revealed large irregularly shaped kidneys, multiple cysts, and very poor renal function. Tr. 167, see Tr. 170-173, 176-178. Marked cardiomegaly was noted along with anemia and metabolic bone disease. Tr. 168 and 175.

During September 1996, Plaintiff was diagnosed with polycystic kidney disease and she began treatment with Drs. Grant Healy and Victor Klimas of Carolina Regional Nephrology Associates ("Carolina Nephrology"). See Tr. 170, 180-183. On October 31, 1996, Plaintiff was hospitalized for uremia (Tr. 184), and by November 7, 1996, she was required to undergo dialysis three times a week (Tr. 179).

After the time of the prior favorable disability decision (November 21, 1996), Plaintiff underwent kidney transplant surgery at the Medical University of South Carolina ("MUSC") and no longer required dialysis. Follow-up appointments revealed that Plaintiff was doing extremely well, with stable renal functions and creatinine levels and no reported difficulties. See Tr. 17, 194, 321, 342-344.

During April 2003, Plaintiff complained to Dr. Michelle Hagenbuch, a family practitioner, about back pain. Examination revealed full range of motion of Plaintiff's back and spine, negative straight leg raises, and pain upon palpation of the thoracic and lumbar areas. Tr. 270-271. During the fall of 2003, Dr. Hagenbuch diagnosed Plaintiff with depression and prescribed Pamelor. Tr. 263.

In November 2003, Plaintiff was examined by Dr. J. Dennis North-Coombes, also of Carolina Nephrology. He wrote that she was doing well and her hypertension under good control. Tr. 319. On January 29, 2004, Dr. North-Coombes noted that Plaintiff had a trace of pretibial edema and enlarged kidneys. She complained of chronic back pain. Dr. North-Coombes planned to change

Plaintiff's blood pressure medications if her hematocrit level rose. Tr. 317-318. Plaintiff complained again of chronic lower back pain in March 2004. Dr. Klimas believed the pain was musculoskeletal and was due to Plaintiff's poor physical condition. Tr. 315.

On May 18, 2004, Dr. Russell Rowland performed a disability reevaluation. Plaintiff complained of low back pain due to her cystic kidneys and about depression. Dr. Rowland noted that Plaintiff appeared depressed. Examination revealed normal strength in Plaintiff's upper and lower extremities, normal spinal alignment, negative seated straight leg raises, and some discomfort with supine straight leg raises. Dr. Rowland wrote that Plaintiff had a moderate decrease in pain perception with distraction. He diagnosed Plaintiff with moderate depression and nonspecific back pain. Dr. Rowland did not assess any functional limitations and opined that Plaintiff had no limitations in her ability to perform work at an assisted living facility. Tr. 194-199.

On May 21, 2004, Dr. North-Coombes' impression was that Plaintiff had multicystic kidney disease with chronic back pain. He wrote that she was seeking disability, her condition interfered with her lifestyle, and it "makes her a very poor candidate for the work force." Tr. 312-313.

On June 4, 2004, Dr. George Chandler, a State agency medical consultant, reviewed Plaintiff's medical records and prepared a Physical Residual Functional Capacity ("RFC") Assessment. Dr. Chandler opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 205-212.

Dr. Renuka Harper, a State agency psychologist, reviewed Plaintiff's records and completed a Psychiatric Review Technique form on June 4, 2004. Dr. Harper opined that Plaintiff's depression was not a severe impairment. She thought that Plaintiff's depression only resulted in mild

6

restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration. Tr. 213-223.

Plaintiff complained to Dr. Hagenbuch of fatigue, persistent sore throat, and fever in June and July 2004. It was noted that Plaintiff was not taking her medications regularly. Tr. 257-258. On July 8, 2004, Dr. Klimas's findings included that Plaintiff's creatinine was elevated at 1.4 on her recent (June 30, 2004) labwork. He wrote that she had done reasonably well since her May 2004 appointment. Tr. 311.

On September 2, 2004, Dr. North-Coombes' impression was that Plaintiff had back pain, multicystic kidney disease, and hypertension. Her medication for hypertension was resumed. Tr. 310. In October 2004, Dr. Hagenbuch referred Plaintiff to an orthopedist for evaluation after she complained of shoulder pain. Tr. 254-255. She underwent an MRI in October 2004 for complaints of headaches and dizziness. The MRI revealed tiny chronic lacunar lesions which were questionable, some degree of empty stella that was generally of no clinical significance, and minimal right maxillary sinus disease. Tr. 277.

Plaintiff's follow-up appointments with the MUSC Transplant Clinic in September and October 2004 revealed that she was doing reasonably well following her renal transplant surgery and her renal functions (with creatinine levels ranging from .9 to 1.3) were stable. Tr. 340-342. In December 2004, the MUSC Transplant Clinic found that Plaintiff's renal functions were stable. She reported no pain over her transplanted kidney. For weight loss she was encouraged to increase her physical activity such as by walking thirty minutes a day. She asked about becoming pregnant and

7

was advised to let the Clinic know two to three months before she planned to become pregnant so that one of her immunosuppressant drugs could be discontinued. Tr. 338-339.

In February 2005, Plaintiff complained to Dr. Hagenbuch of stress and being tearful and moody. Cymbalta was prescribed (in place of Pamelor) and she appears to have been referred to the Beckman Center for Mental Health Services. Tr. 353, 368

On February 17, 2005, Dr. Dennis North-Coombes opined that Plaintiff was unable to "hold a standing or even a sitting job" because of pain caused by her multicystic kidney disease. Tr. 354. A repeat MRI of Plaintiff's brain in April 2005 showed abnormalities requiring further testing. A magnetic resonance angiography was ordered, which showed no intercranial aneurism. See Tr. 289, 394-395. At follow-up appointments in May and July, 2005, Dr. North-Coombes noted that Plaintiff's creatinine levels were normal, her kidney functions were stable, and she was in less pain. He indicated that he wrote a note to Social Security stating that Plaintiff could only work twenty hours a week; could not sit, stand, or walk for more than three hours a day; could not lift more than twenty pounds; and he hoped she got an extension of her check. Tr. 376-379.

A nuclear stress test in September 2005 was negative for reproduction of angina and an EKG was equivocal for evidence of ischemia. Tr. 387. Plaintiff's creatinine level appeared to be elevated at 1.6 (there are no correlating physician's notes in the record as to this labwork) in November 2005. Tr. 373.

In November 2005, Plaintiff was examined by Dr. Alfred Ebert, a psychiatrist, for complaints of depression. She reported that she had been sad and depressed for several years and did not find life enjoyable. She recounted a sexual assault some six to seven years earlier and complained of hearing voices and having flashbacks. Additionally, she stated that she had never been to a

psychiatric hospital and had been prescribed antidepressant medications that had not helped much. Plaintiff was diagnosed with recurring major depression with psychotic features and post-traumatic stress. Wellbutrin and Abilify were prescribed. She was directed to return in two months and attend counseling and therapy. Tr. 357-359.

Plaintiff submitted additional medical records to the Appeals Council after the ALJ's decision. These records indicate that Plaintiff was hospitalized on April 17, 2006, after a three-day history of nausea and vomiting. Plaintiff was diagnosed with acute renal failure and transferred to the MUSC on April 20, 2006 for evaluation. Tr. 402-403.[1]

Dr. North Coombes examined Plaintiff on June 16, 2006. Tr. 411-412. Physical examination results were normal, but Dr. North-Coombes opined that Plaintiff's severe back pain was interfering with her lifestyle. Tr. 411. On June 29, 2006, Plaintiff complained to Dr. Istvan Bognar at Carolina Nephrology of episodic back pain. He noted that Plaintiff's kidney function had been stable; her creatinine level was improved at 3.1; she was feeling well, although she reported not sleeping well; and she was doing well overall. Tr. 405-407. On August 20, 2006, Dr. North-Coombes completed a form (which appears to be a checklist from Plaintiff's representative) on which he checked that Plaintiff was able to walk and stand no more than two hours and could sit six hours in an eight-hour workday. He thought that Plaintiff was capable of performing full-time sedentary work. Tr. 404.

## HEARING TESTIMONY

At the December 2005 hearing, Plaintiff stated that she had been working ten hours on the weekends as a home health care aide since August 2005. Prior to that, she worked for approximately

---

[1] The transcript contains no medical records from the MUSC as to this incident.

9

three months as an auto parts delivery person, and for eight to nine months previously as a medical technician in an assisted living facility. She testified that she lived alone and drove fifty to sixty miles a week. See Tr. 442-447, 451.

## **SEQUENTIAL EVALUATION PROCESS FOR DETERMINING IF DISABILITY CONTINUES**

There is an eight-part sequential evaluation process for determining if disability continues. This requires the ALJ to consider whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has an impairment which meets or equals the severity of an impairment in the Listing of Impairments; (3) there has been medical improvement; (4) any exception to the medical improvement standard applies; (6) Plaintiff's current impairment or combination of impairments is severe; (7) Plaintiff's RFC will allow him or her to perform past relevant work; and (8) other work exists in the national economy he or she can perform considering age, education, past work experience, and remaining physical and mental capabilities. See 20 C.F.R. § 404.1594(a) and (f).

## **DISCUSSION**

Plaintiff asserts that: (1) the ALJ failed to explicitly state the weight given all relevant evidence and in doing so erred in not finding that Plaintiff's mental impairment was not severe, and (2) the Appeals Council failure to make specific findings regarding new evidence is reversible error. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

---

[2]Substantial evidence is:
>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial
>(continued...)

A. <u>Severe Impairment/Consideration of Relevant Evidence</u>

Plaintiff alleges that the ALJ failed to state the weight given to evidence regarding her mental impairment and specifically claims that the ALJ erred in not indicating the weight[3] given to Dr. Roland's diagnosis of moderate depression and Dr. Ebert's diagnosis of major depression with psychotic features and post-traumatic stress. She appears to claim that in doing so, the ALJ erred in finding that her depression was a non-severe impairment. The Commissioner contends that the ALJ considered the evidence of record regarding Plaintiff's depression and properly determined that it was a non-severe impairment. Additionally, the Commissioner acknowledges that the ALJ did not indicate what weight he gave to the opinions of Drs. Rowland and Ebert, but contends that he considered and mentioned these opinions, such that any error is harmless (as Plaintiff was not prejudiced by any error because it had no bearing on the ultimate decision).

It is the claimant's burden to show that she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

The abilities and aptitudes necessary to do most jobs. Examples of these include --

---

[2](...continued)
evidence."
Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[3]To assist the reviewing courts in determining whether his findings are supported by substantial evidence, the ALJ must "explicitly indicate[ ] the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir.1984); see also 20 C.F.R. § 404.1527.

11

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Here, the ALJ's determination that Plaintiff did not have a severe mental impairment is supported by substantial evidence. Although Plaintiff was diagnosed with depression, she has not met her burden to show that this impairment is severe. None of Plaintiff's treating or examining physicians placed any limitations on her ability to perform work activities based on her mental impairment. The ALJ's decision is also supported by the opinions of the State agency physician and psychologist which indicated that Plaintiff was able to perform work within the RFC found by the ALJ (Tr. 205-212, 213-226). See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

Dr. Harper determined Plaintiff's depression would only have mild restrictions on her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 223). See 20 C.F.R. § 404.1520a(d)("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe..."). Additionally, Plaintiff did seek or receive any significant ongoing treatment for depression, she was treated conservatively with medication, and she did not follow-up with recommendations for counseling. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)(ALJ properly considered the inconsistency between claimant's level of treatment and her claims of disabling symptoms); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)(conservative treatment not consistent with an allegation of disability). When Plaintiff was examined by Dr. Ebert, it was noted that she was not taking any medications for a mental impairment and had not been hospitalized for any mental impairment. See Tr. 357. There is no indication in the medical records that Plaintiff ever returned to Dr. Ebert after her initial visit or that she obtained any psychological counseling.

Even if the ALJ erred in not finding that Plaintiff's depression was "severe" at step two, any error would be harmless[4] because none of Plaintiff's treating or examining physicians found any functional limitations. In this case, the ALJ took any possible mental limitations and medicine side-effects into account by limiting Plaintiff to unskilled, simple, routine work. See Tr. 17 and 22.

Additionally, the ALJ specifically considered Plaintiff's impairments individually and in

---

[4]See Mickles v. Shalala, 29 F.3d at 921 (affirming decision despite error "because there is no question but that [the ALJ] would have reached the same result notwithstanding his initial error [ ]").

13

combination in determining that her impairments present as of June 1, 2004 did not meet or medically equal one of the Listings of Impairments. Tr. 17. He also specifically considered whether Plaintiff's depression met or equaled the listing at § 12.04 (Affective Disorders). Tr. 20-21.

Although the ALJ failed to specifically state what weight he placed on the medical findings of Drs. Rowland and Ebert, any such error is harmless as it had no bearing on the ultimate decision. As noted above, neither Dr. Rowland nor Dr. Ebert indicated any functional limitations resulting from her depression, and neither opined that Plaintiff was disabled due to her depression. The ALJ also included a mental limitation in the RFC assessment when he limited Plaintiff to unskilled work which was simple and routine. Where the ALJ has sufficiently considered all of the evidence to permit a reviewing court to conduct a meaningful review of the decision, failure to explicitly state a weight given to every opinion does not necessarily constitute reversible error. See Stewart v. Apfel, 182 F.3d 909 (4th Cir. 1999)[Table].

    B.    <u>Appeals Council</u>

Plaintiff alleges that the Appeals Council's failure to make specific findings regarding new evidence presented to it is reversible error. She submitted evidence to the Appeals Council which she claims shows she had acute renal failure and continued elevated creatinine levels. Plaintiff also claims Dr. North-Coombes' finding that she could perform sedentary work contradicts the ALJ's determination that she could perform a range of light work.[5] The Commissioner contends

---

[5] Plaintiff also argues that the ALJ "approached if not crossed the line of violating [Plaintiff's] due process rights by cutting off the questioning of her paralegal representative, saying he had no evidence of the hospitalization." Review of the transcript reveals that the ALJ allowed Plaintiff to testify and Plaintiff's representative to discuss that Plaintiff had allegedly gone into kidney rejection a few days prior to the December 2005 hearing, but that the ALJ noted that there was no medical records to support the assertion. Plaintiff testified that she had not been hospitalized for the
(continued...)

that the Appeals Council was not required to articulate more specific findings for how it weighed the newly submitted evidence.

The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. See Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

Here, the Appeals Council fulfilled its obligation in reviewing the submitted new evidence. It specifically considered the records from Greenville Hospital System from April 17 to 20, 2006; Interrogatory Responses from Dr. North-Coombes; and Records from Carolina Nephrology for June 16 to 29, 2006. See Tr. 7 and 10. The Appeals Council provided reasons for determining why the new evidence supported their denial of Plaintiff's request for review of the ALJ's decision. In its order, the Appeals Council stated that:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

---

[5](...continued)
condition, although she had traveled to Charleston for an ultrasound and blood work. The ALJ allowed Plaintiff's representative additional time to submit evidence to him of the alleged rejection. Tr. 453-458. It was noted in the ALJ's decision, however, that although six months passed, no additional medical evidence concerning the alleged kidney rejection had been submitted. Tr. 18.

> The additional medical evidence indicates that you had kidney rejection problems in April 2006, but follow-up visits show that those problems were resolved. On August 20, 2006, Dr. North-Coombes indicated that you are capable of full-time work.
>
> Your attorney states that you condition has not improved, that the Administrative Law Judge ignored the opinion of the treating physician, and that this case should be remanded to the Hearing Office for additional vocational expert testimony. The record shows that adequate Vocational Expert evidence was obtained at the hearing, and the decision indicates that the Administrative Law Judge evaluated your condition in light of all the evidence of record, including the opinion of the treating physician and the testimony of the Vocational Expert. The Appeals Council concludes that the decision of the Administrative Law Judge is supported by substantial evidence.

Tr. 7.

That Dr. North-Coombes later found that Plaintiff was capable of performing sedentary work does not provide a basis to change the ALJ's decision because he previously found she was capable of less than sedentary work. The ALJ considered and discounted Dr. North-Coombes' earlier opinions (and Plaintiff has not challenged the rejection of these opinions) as they were not supported by his treatment notes or by those of other treating and examining physicians. See Tr. 19. Plaintiff also appears to allege that the new records indicate a worsening of Plaintiff's condition or a rejection of her donor kidney. The records subsequent to her April 2006 hospitalization, however, indicate improvement. Further, considering the new evidence submitted to the Appeals Council with the other evidence of record, there is no indication as of the time of the ALJ's decision (July 2006), that any disabling condition had lasted or was expected to last for a period of not less than twelve months.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has

16

produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

August 31, 2009
Columbia, South Carolina

17